# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 928 | **DATE** | 2/4/2003 |
| **CASE TITLE** | Jane Doe vs. Chicago Police Officer Charlie White, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Motion of defendant City of Chicago for summary judgment [44-1] is granted. Judgment entered in favor of City of Chicago on Counts VI and VII. City of Chicago is dismissed from the action. Case will proceed to trial against defendant White on 4/7/03. In the meantime, the parties are directed to meet in an effort to resolve this case.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | 4 number of notices |
| ✓ | Notices mailed by judge's staff. | FEB 0 5 2003 date docketed |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | G-L docketing deputy initials |
| | Mail AO 450 form. | 2/4/2003 |
| | Copy to judge/magistrate judge. | date mailed notice |
| MD | courtroom deputy's initials | MD mailing deputy initials |
| | Date/time received in central Clerk's Office | |

Document Number

52

FEB 0 5 2003

|  |  |
|---|---|
| JANE DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 00 C 0928 |
| | ) Judge Joan H. Lefkow |
| CHICAGO POLICE OFFICER CHARLIE | ) |
| WHITE, #4697; and the CITY OF CHICAGO, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jane Doe ("Doe"), brings this action against defendants, Officer Charlie White ("White") and the City of Chicago ("Chicago"), in a seven-Count Complaint. Against White, Doe alleges illegal seizure and detention pursuant to 42 U.S.C. § 1983 (Count I); violations of equal protection pursuant to 42 U.S.C. § 1983 (Count II); state law claims for assault and battery (Count III); state law claims for intentional infliction of emotional distress (Count IV); and a state law claim for false arrest (Count V). Doe alleges that Chicago is liable under the doctrine of *respondeat superior* under state law (Count VI) and for indemnification under state law pursuant to 745 ILCS 10/9-102 (Count VII). Chicago has now moved under Rule 56, Fed. R. Civ. P., for summary judgment as to the Count VI and VII claims against it. The court has jurisdiction over the claims pursuant to 28 U.S.C. §§ 1331, 1343(a) and 1367. For the reasons set forth below, the court grants the motion.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).


## FACTS STATED IN A LIGHT MOST FAVORABLE TO PLAINTIFF

Doe is an adult woman and at all relevant times has been a resident of Chicago, Illinois. (Def. L.R. 56.1 ¶ 1.) White, also a resident of Chicago, was at all relevant times employed as a police officer by Chicago. (Def. L.R. 56.1 ¶ 2.) Chicago is an Illinois municipality. (Def. L.R. 56.1 ¶ 3.)

On November 13, 1999, Doe was involved in a collision with a pickup truck, whose driver left the scene and abandoned the truck after the accident. (Def. L.R. 56.1 ¶¶ 10-13.) Doe started to drive home after the accident but saw a Chicago Police Department van. (Def. L.R. 56.1 ¶ 13.) Doe pulled up to the van and told White, the officer in the van, about the accident. (*Id.*) White told her to lead him back to the scene, where he stated that he would make a report of the accident. (Def. L.R. 56.1 ¶ 14.) In connection with making the report, Doe gave White her driver's license. (*Id.*)

During the making of the report, White "flirted" with Doe, told her how pretty she was, asked her where she worked, stated that he would have to come have a drink where Doe worked as a bartender, and repeatedly asked Doe for her phone number. (Pl. L.R. 56.1 ¶¶ 4-5, 10; Doe Dep. at 37-40.) Doe gave White information about where she previously had worked, and gave him a false phone number, because Doe did not know any other way to get out of the situation quickly and safely and because she did not want White to come where she worked. (Pl. L.R. 56.1 ¶ 9; Def. L.R. 56.1 ¶ 17.) Doe was uncomfortable and embarrassed during the incident. (Pl. L.R. 56.1 ¶ 12.) Doe believed something was wrong with White because he was coming onto her while filling out the report. (Pl. L.R. 56.1 ¶ 13.)

Later that night, at 10:11 p.m., White called the wrong number Doe had given to him from the 17th District police station. (Pl. L.R. 56.1 ¶ 14.) During the months of November and January, White called Doe's home — this time using the correct number—thirty to forty times while on and off-duty.[1] (Pl. L.R. 56.1 ¶ 15.) White admits to calling Doe from home, the 17th District police station, and Jerusalem Liquor Store, all while on duty. (Pl. L.R. 56.1 ¶ 16.) These

---

[1] The parties do not specify where White obtained Doe's home phone number to make these calls.

calls came at times when Doe would not normally receive phone calls, such as at 11:30 p.m., 1:00 a.m. and 2:00 a.m. (Pl. L.R. 56.1 ¶ 20.) Doe, who had caller I.D. and normally did not pick up the phone if she did not recognize the number, on one occasion inadvertently picked up the phone and had a conversation with White. (Pl. L.R. 56.1 ¶ 23.) White told Doe that he would come over for "that drink she owed him." (*Id.*) Doe got off the phone as quickly as she could by making excuses about her parents. (*Id.*) Doe specifically told White not to call her again and refused to give White her home address when he requested it. (Pl. L.R. 56.1 ¶¶ 26-27.)

On January 8, 2000, Doe was traveling in her car when she saw White driving a police minivan, on-duty, in uniform, and with a partner. (Pl. L.R. 56.1 ¶ 32.) Doe attempted to get away without White seeing her, but he recognized Doe and changed his direction of travel to pull her over. (*Id.*) As White and his partner exited the vehicle, White stated that the reason he had pulled Doe over was because she had committed a traffic offense. (Pl. L.R. 56.1 ¶ 35.) White asked Doe for her driver's license and where she was going. (Pl. L.R. 56.1 ¶ 37.) Doe responded that she was going to work, even though she was not, because she did not want him to bother her and felt pressured and intimidated. (Pl. L.R. 56.1 ¶ 38.) White told Doe that he was going to stop by her home. (Pl. L.R. 56.1 ¶ 46.)

On January 21, 2000, White, while on duty, in uniform, and driving a police van, came to the front door of Doe's residence, but Doe was not at home. (Pl. L.R. 56.1 ¶ 37.) On January 25, 2000, Doe was at home with her outer gate locked. (Def. Resp. to Pl. L.R. 56.1 ¶ 39.) White broke into Doe's home and entered her kitchen while Doe was asleep in an adjacent room. (Pl. L.R. 56.1 ¶ 41.) During this encounter, of which Doe became aware when her child stated that there was a man in the kitchen, Doe repeatedly indicated to White while he was walking around

searching the apartment that he should leave. (Pl. L.R. 56.1 ¶ 44.) Doe told White to leave because she had things to do and she had to go to work that night. (Def. L.R. 56.1 ¶ 63.) White responded that he also had to go and asked to use the bathroom, which he was allowed to do. (*Id.*) White used the bathroom and came out into the kitchen. (Def. L.R. 56.1 ¶ 64.) Doe noticed that White had not closed the zipper on his pants and was exposing himself. (*Id.*) White then came up behind Doe and started rubbing himself against her while he was holding her by her waist. (*Id.*) Doe asked White to stop, and when he did, she asked him to leave. (Def. L.R. 56.1 ¶ 66.)

White later visited Doe's house again on January 30, but Doe was not at home. (Def. L.R. 56.1 ¶ 74.) Doe then contacted the Chicago Police Office of Professional Standards ("OPS") and complained about White's conduct, although Doe did not give her name. (Def. L.R. 56.1 ¶ 76; Pl. L.R. 56.1 ¶ 51.)

On February 7, Doe, after being awakened by her son, saw that White had again broken into her home and was standing inside her apartment by her bed. (Pl. Resp. to Def. L.R. 56.1 ¶ 77.) Doe began screaming and told White that she was calling 911, to which White responded by saying that "he was 911." (Pl. L.R. 56.1 ¶ 55.) Doe called the OPS and demanded that someone take her complaint. (Pl. L.R. 56.1 ¶ 57.) Doe spoke with Cindy Gross from the Internal Affairs Division. (Pl. L.R. 56.1 ¶ 59.) Doe continued, however, to receive phone calls from White. (Pl. L.R. 56.1 ¶¶ 61-63.) White also came to Doe's home on February 14 and tried to open the door and enter her apartment. (Pl. L.R. 56.1 ¶ 65.) Doe continued her complaint process through the OPS and Internal Affairs, and eventually the Police Board of Chicago found White guilty of

telephone harassment and trespass. (Pl. L.R. 56.1 ¶ 91.) The Board suspended White from his position as a police officer from March 15, 2001 until February 8, 2002. (*Id.*)

## DISCUSSION

The issue for the court to resolve on this motion is whether White's actions were "within the scope of his employment" as that term is defined under Illinois law. Under Illinois law, an employer may be vicariously liable for an employee's torts under the doctrine of *respondeat superior* if the torts were committed within the "scope of the employment" of the employee. *Pyne* v. *Witmer*, 129 Ill.2d 351, 360, 543 N.E.2d 1304, 1309 (1989). Moreover, under 745 ILCS 10/9-102, "[a] local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages for which it or an employee *while acting within the scope of his employment* is liable in the manner . . . ." (emphasis added). Doe brings claims against Chicago on these bases, arguing that Chicago is liable under the doctrine of *respondeat superior* (Count VI) and for indemnification under § 9-102 (Count VII). If the court concludes that White's actions are properly within the scope of his employment, Doe can state a claim on each of her two counts against Chicago. If Doe's actions are outside the scope of his employment, recovery cannot be made against Chicago and it should be dismissed from the action.

Because the court deals with issues of state law, it acts as "but a surrogate court," *Holtz* v. *J.J.B. Hilliard W.L. Lyons, Inc.*, 185 F.3d 732, 750 (7th Cir. 1999), applying the law as determined by the highest court of the state or as it would be determined by that court if the present case were before it now. *E.g., Allstate Ins. Co.* v. *Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002); *State Farm Mut. Ins. Co.* v. *Pate*, 275 F.3d 666, 669 (7th Cir. 2001). To be within

6

the scope of employment under Illinois law, acts must have been done at least in part to serve the employer's interest. *E.g.*, *Wright* v. *City of Danville*, 174 Ill.2d 391, 405, 675 N.E.2d 110, 118 (1996) ("While even criminal acts of an employee may fall within the scope of employment . . . , if the employee's actions are different from the type of acts he is authorized to perform *or were performed purely in his own interest*, he has departed from the scope of employment.") (emphasis added).

While the "scope of employment" issue is generally reserved for determination by a jury, *e.g.*, *Pyne*, 129 Ill.2d at 359, 543 N.E.2d at 1308, Illinois courts have consistently found acts of sexual misconduct to be outside of the scope of employment as a matter of law. *E.g.*, *Deloney* v. *Bd. of Educ. of Thornton Township*, 281 Ill. App. 3d 775, 783-84, 666 N.E.2d 792, 797-98 (1st Dist. 1996) (truant officer's sexual relations with 16 year old student out of the scope of employment); *Randi F.* v. *High Ridge YMCA*, 170 Ill. App. 3d 962, 968-69, 502 N.E.2d 966, 971-72 (1st Dist. 1988) (sexual assault of child by day care teacher was outside the scope of employment); *Bates* v. *Doria*, 150 Ill. App. 3d 1025, 1029-30, 502 N.E.2d 454, 457 (2d Dist. 1986) (off-duty sheriff's sexual misconduct outside the scope of employment); *Webb* v. *Jewel Companies*, 137 Ill. App. 3d 1004, 1006, 485 N.E.2d 409, 411 (1st Dist. 1985) (store security guard's sexual misconduct outside the scope of employment). Moreover, federal courts applying Illinois law have reached the same conclusion. *E.g.*, *Dorsey* v. *Givens*, 209 F. Supp. 2d 850, 852-53 (N.D. Ill. 2001) (correctional officer's improper sexual touching of a prisoner outside scope); *Johnson* v. *CHA Sec. Officers*, No. 97 C 3746, 1997 WL 638479, at *1 (N.D. Ill. Oct. 8, 1997) (CHA security officer's sexual assault outside the scope of employment because not related to employment); *Doe* v. *Hudgins*, No. 97 C 0106, 1997 WL 337247, at *2 (N.D. Ill. June

7

17, 1997) (CHA police officer's sexual assault not within the scope of employment under Illinois law); *Hughley* v. *Hudgins*, No. 97 C 73, 1997 WL 285889, at *4 (N.D. Ill. May 23, 1997) (CHA police officer's sexual assault outside the scope of his employment under Illinois law); *Zupan* v. *Sheahan*, No. 95 C 1302, 1996 WL 674021, at *5 (N.D. Ill. Nov. 19, 1996) (Deputy Sheriff's sexual misconduct outside the scope of employment because it did nothing to "further the interests of the Sheriff."); *Gambling* v. *Corish*, 426 F. Supp. 1153, 1155 (N.D. Ill. 1977) (sexual assault by off-duty police officers not in the scope of employment).

The reasoning of these courts has been clear: sexual misconduct, which by its nature is solely for the personal benefit of the transgressor, cannot be done at least in part to serve the employer's interest. Moreover, courts have distinguished other criminal acts, such as excessive force, found to be at least in part for the benefit of the employer because excessive force can be deemed an "extension of [] responsibilities," as it may have the purpose of making an arrest or extracting a confession. *Dorsey*, 209 F. Supp. 2d at 852. Conversely, these courts have viewed sexual misconduct as only for personal gratification.

Doe attempts to distinguish these cases on grounds that the situation present here is that of a police officer, and the actions at issue were dependent on and arose out of such status as a police officer. Doe relies on (1) an Illinois Appellate Court decision, in dictum, rejecting sexual misconduct as being outside the scope of employment of a psychotherapist, *St. Paul Fire & Marine Ins. Co.* v. *Downs*, 247 Ill. App. 3d 382, 391, 617 N.E.2d 338, 344 (1st Dist. 1993); (2) a "foreshadowing" of a distinction for sexual misconduct by police officers in *Deloney*, 281 Ill. App. 3d at 785 nn.5-6, 666 N.E.2d at 799 nn.5-6, citing *Mary M.* v. *City of Los Angeles*, 54 Cal. 3d 202, 814 P.2d 1341 (1991); (3) Judge Posner's dictum in *West* v. *Waymire*, 114 F.3d 646, 649

8

(7th Cir. 1997), and *Jansen* v. *Packaging Corp. of Am.*, 123 F.3d 490, 507 (7th Cir. 1997) (en banc) (Posner, J., concurring and dissenting); and (4) what Doe calls a "national trend" construing police officer sexual misconduct within the scope of employment. The court will consider these arguments in turn.

## A.   Doe's Reliance on *St. Paul*.

Doe argues that the court should rely on an Illinois Appellate Court's decision that a psychotherapist's sexual misconduct may be within the "scope of employment" sufficient to hold an employer responsible. *St. Paul Fire & Marine Ins. Co.*, 247 Ill. App. 3d at 391, 617 N.E.2d at 344. As the same appellate court that decided *St. Paul* noted in *Stern* v. *Ritz Carlton Chicago*, 299 Ill. App. 3d 674, 678, 702 N.E.2d 194, 197 (1998), the court's holding in *St. Paul* was based on collateral estoppel principles; only in dictum did the court address the issue of the sexual misconduct of the psychotherapist as within the scope of employment. Moreover, as noted in *Stern*, the court in *St. Paul* focused extensively on the issue of "transference," which occurs when a patient "transfers feelings toward everyone else to the doctor, who then must react with a proper response, the countertransference, in order to avoid emotional involvement and assist the patient in overcoming problems." *St. Paul Fire & Marine Ins. Co.*, 247 Ill. App.3d at 391, 617 N.E.2d at 344. As the court recognized, when "the therapist mishandl[es] this phenomenon [] it generally results in sexual relations with the patient . . . . Accordingly, the sexual misconduct of the therapist could be viewed as inside the scope of treatment under the guise of therapy." *Id.* at 391-92, 617 N.E.2d at 344. No such similar issue of transference places White's conduct within the scope of his employment.

9

Finally, in *Stern*, the court cited favorably cases more similar to the scenario here, including *Deloney*, which involved a truant officer's sexual assault of a sixteen year old girl. In *Deloney*, the court remarked that while the truant officer's "employment provided the opportunity for his misconduct, by no stretch of the imagination could his actions be deemed an extension, albeit unlawful, of his functions or responsibilities as a truant officer." 299 Ill. App. 2d at 680, 702 N.E.2d at 198. The court believes the factual scenario present in this case to be more similar to that in *Deloney* than in *St. Paul*. As such, the court concludes that Doe's reliance on *St. Paul* is unavailing.

**B.     Foreshadowing of Police Misconduct in *Deloney*.**

Doe next argues that Illinois courts have "foreshadowed" that different rules may be applicable to police officers in sexual misconduct cases. Doe points to a footnote in the *Deloney* decision, where the court stated,

> While in Illinois the cases are clear that as a matter of law acts of sexual assault are not within the scope of employment, a recent California case, *Mary M.* v. *City of Los Angeles*, 54 Cal. 3d 202, 285 Cal. Rptr. 99, 814 P.2d 1341 (1991), held that a question of fact existed as to whether a police officer's sexual assault of a motorist detained for a traffic violation was within the scope of his employment. In reaching that conclusion, the court contrasted the sexual molestation by a school employee, a custodian, from that of a police officer and stated:
>
> > "There is no aspect of a janitor's duties that would make sexual assault anything other than highly unusual and very startling." [*Alma W.* v. *Oakland Unified School District*, 123 Cal. App. 3d 133, 143, 176 Cal. Rptr. 287 (1981).] By contrast, the very nature of law enforcement employment requires exertion of physical control over persons whom an officer has detained or arrested. The authority to use force when necessary in securing compliance with the law is fundamental to a police officer's duties in maintaining the public order. [Citation.] That authority carries with it the risk of abuse. The danger that an officer will commit a sexual assault while on duty arises from the considerable authority and control

10

> inherent in the responsibilities of an officer enforcing the law.
> Those responsibilities do not at all resemble the duties of a school
> custodian."

*Deloney*, 281 Ill. App. 3d at 786 n.5, 666 N.E.2d at 799 n.5 (internal citations omitted). Doe

relies on this footnote in conjunction with footnote 6, where the court noted that "[a] further

distinction can be made in that the defendants in *Rogers* [v. *City of Youngstown*, 574 N.E.2d 451

(Ohio 1991),] and *Hassan* [v. *Fraccola*, 851 F.2d 602 (2d Cir. 1988),] were police officers

whereas *Deloney* was a school employee. *See Mary M.* v. *City of Los Angeles*, 54 Cal. 3d 202,

285 Cal. Rptr. 99, 814 P.2d 1341 (1991) as discussed in footnote 5 supra."

Contrary to Doe's suggestions, the court is reluctant to view these footnotes as a

foreshadowing of how police cases may treated under Illinois law. In footnote 5, the court

merely cited a case which comes to a different conclusion, as illustrated by the beginning of the

footnote which states, "While in Illinois the cases are clear that as a matter of law acts of sexual

misconduct are not within the scope of employment . . . ." *Deloney*, 281 Ill. App. 3d at 786 n.5,

666 N.E.2d at 799 n.5. Moreover, in footnote 6, the court specifically states that the

police/school employee is a *"further distinction." Id.* at 788 n.6, 666 N.E.2d at 800 n.6. The

court, in the text, distinguished *Rogers* and *Hassan*, both excessive force cases, on the grounds

that the misconduct, assaulting and battering a citizen in *Rogers* and filing a false report against a

citizen in *Hassan*, could both be "characterized as an extension, albeit unlawful, of their police

function." *Id.* at 787-88, 666 N.E.2d at 800. With nothing more than a footnote reference to a

California decision, the court cannot conclude that the Illinois Supreme Court would extend the

"scope of employment" to include acts committed by police officers even when not for the

benefit of their employer.

## C. Judge Posner's Statements in *West* and *Jansen*.

Doe next points to Judge Posner's opinion in *West* v. *Waymire*, 114 F.3d 646 (7th Cir.

1997), as support for the view that sexual misconduct by police officers should fall within the

ambit of those officers' scope of employment. Judge Posner, writing for the panel, stated in

dictum,

> Were this an ordinary tort case (as its state-court clone appears to be, cf. *Tittle* v.
> *Mahan*, 582 N.E.2d 796 (Ind. 1991); *Tom* v. *Voida*, 654 N.E.2d 776, 786 (Ind.
> App. 1995); *City of Indianapolis* v. *Ervin*, 405 N.E.2d 55, 60 (Ind. App. 1980)
> there would be little doubt about the liability of the Town of Frankton, as
> Waymire's employer, for the tortious acts that Waymire committed upon Amanda,
> assuming the plaintiff's version of the facts was confirmed at trial. It is true that
> the sexual misconduct of an employee, being intentional misconduct unrelated to
> any possible motive of furthering the employer's business, is not automatically
> imputed to the employer under the doctrine of respondeat superior even when it
> occurs at work during working hours. *Konkle* v. *Henson*, 672 N.E.2d 450, 456-57
> (Ind. App. 1996); *Tomka* v. *Seiler Corp.*, 66 F.3d 1295, 1317-18 (2d Cir. 1995);
> *Andrade* v. *Mayfair Management, Inc.*, 88 F.3d 258, 261-62 (4th Cir. 1996); W.
> Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 70, pp. 505-06 (5th
> ed. 1984). And in the analogous area of sexual harassment by one worker of
> another, challenged under Title VII of the Civil Rights Act of 1964, the plaintiff
> must, at least if the harasser is not a supervisory employee, show that the
> employer was negligent in failing to prevent the harassment. *E.g.*, *MacKenzie* v.
> *Illinois Dept. of Transportation*, 92 F.3d 473, 480 (7th Cir. 1996); *Baskerville* v.
> *Culligan International Co.*, 50 F.3d 428, 432 (7th Cir. 1995); *Splunge* v.
> *Shoney's*, Inc., 97 F.3d 488, 490 (11th Cir. 1996); *Burns* v. *McGregor Electronic
> Industries, Inc.*, 989 F.2d 959, 966 (8th Cir. 1993). But when the employee is a
> male police officer whose employer has invested him with intimidating authority
> to deal in private with troubled teenaged girls, his taking advantage of the
> opportunity that authority and proximity give him to extract sexual
> favors from these girls should be sufficiently within the orbit of his employer-
> conferred powers to bring the doctrine of respondeat superior into play, *Mary M* v.
> *City of Los Angeles*, 54 Cal. 3d 202, 285 Cal. Rptr. 99, 814 P.2d 1341, 1349-53
> (1991); *Primeax* v. *United States*, 102 F.3d 1458, 1463 (8th Cir. 1996); *Red Elk* v.
> *United States*, 62 F.3d 1102, 1107 (8th Cir. 1995), even though he is not acting to
> further the employer's goals but instead is on a frolic of his own. We want the
> police department to supervise its officers in this domain with especial care, and
> so we do not impose on the plaintiff the burden of establishing negligent
> supervision. The application of the doctrine of respondeat superior in these

circumstances is nourished by the same considerations of policy that impose strict liability, or a nondelegable duty of care, on enterprises engaged in especially hazardous activities. The more hazardous the activity, the more we want the actor to investigate *all* feasible means of reducing the hazards, whether or not they are means encompassed by a judge's or jury's conception of due care. *Indiana Harbor Belt R.R.* v. *American Cyanamid Co.*, 916 F.2d 1174, 1177 (7th Cir. 1990); *Anderson* v. *Marathon Petroleum Co.*, 801 F.2d 936, 939 (7th Cir. 1986).

*West*, 114 F.3d at 649; *see also, Jansen* v. *Packaging Corp. of Am.*, 123 F.3d 490, 507 (7th Cir. 1997) (Posner, J., concurring and dissenting) ("[*St. Paul*"] belongs to the class of cases, illustrated also by sexual molestation by police officers . . . in which the employer has entrusted the employee with unique power to molest or otherwise oppress subordinates or members of the public . . . .").

While the court agrees with Judge Posner's analysis and reasoning, it must remain mindful of the dangers of developing state law doctrines that state appellate courts cannot review. *E.g., Holtz*, 185 F.3d at 750 ("As a federal court, we are reluctant to expand the law of the state in a manner that, while perhaps logical, is not clearly in line with the state's existing thinking on the subject."). In *West*, suit was brought pursuant only to a federal claim, 42 U.S.C. § 1983, rendering Judge Posner's analysis on state grounds dictum. Moreover, if state law claims were involved in *West*, they would have been Indiana state law claims, a point Judge Posner acknowledged in a later opinion. *See Wilson* v. *City of Chicago*, 120 F.3d 681, 685 (7th Cir. 1997) ("*West* was not a case governed by Illinois law, and we won't speculate on how it might have been decided under that law."). Illinois courts have consistently held that sexual misconduct is outside the scope of employment because such conduct is solely for the benefit of the transgressor. While sympathetic to Doe's view of how the law in this area should progress, like the court in *Dorsey*, "[w]e are bound by our understanding of Illinois law, whether we agree

with it or not. And we do not perceive in Illinois law the distinction between police and non-police conduct . . . ." *Dorsey* v. *Givens*, 209 F. Supp. 2d 849, 850 (N.D. Ill. 2001).

**D.      National Trend Toward Holding Police Officers Liable**

Finally, Doe relies on what she refers to as a "national trend" holding police departments accountable for sexual assaults by their employee officers. *See, e.g.*, *St. John* v. *United States*, 240 F.3d 671, 675-78 (8th Cir. 2001) (sexual assault by police officer could have been within the scope of employment); *Moor* v. *Hosier*, 43 F. Supp. 2d 978, 991 (N.D. Ind. 1998) (fact question for the jury whether county sheriff's sexual assault was within the scope of employment); *Battista* v. *Cannon*, 934 F. Supp. 400, 406 (M.D. Fla. 1996) (fact question whether sexual battery by deputy sheriff was within scope of employment; *Carney* v. *White*, 843 F. Supp. 462, 479-80 (E.D. Wis. 1994) (fact question as to whether actions of police officer attempting to induce sexual relations was within the scope of employment); *Mary M.*, 54 Cal. 3d at 216-22, 814 P.2d at 1349-53. On this motion, however, the court is bound by construction of Illinois law by Illinois courts. None of these cases sheds light on how an Illinois court has decided or would decide this issue.


**CONCLUSION**

For the reasons stated above, the court concludes, based on Illinois law, that White's acts are not within the scope of his employment as a matter of law. Thus, the court grants Chicago's motion for summary judgment [#44]. The clerk is instructed to enter judgment in favor of Chicago on Counts VI and VII. Chicago is dismissed from the action. This case will proceed to

14

trial against White on April 7, 2003. In the meantime, the parties are directed to meet in an effort to resolve this case.

ENTER: _Joan H. Lefkow_
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: February 4, 2003